The next case on the calendar is United States v. Bescond. Good morning, Your Honor. Lawrence Stasel for Appellant. Are you ready for me to proceed? Yes, please do. Thank you, and may it please the Court. This is an appeal of the lower court's unwarranted expansion of the Fugitive Disentitlement Doctrine to Appellant Bescond, a French citizen who has lived her entire life in France, whose alleged conduct took place entirely in France, and who never fled from the United States or failed to, quote, return after learning of her indictment. Compounding the lower court's error, this court's decision in prime international, rendered after the lower court's ruling, confirms that this prosecution is impermissibly extraterritorial. Before turning to the merits, we note that the government's brief re-argues that this court lacks jurisdiction under the motions panel already rejected these same arguments, none of which is either cogent or compelling. Judge Seibert's opinion conceded that Appellant does not fit any recognized category of fugitive. Indeed, in Colossos, which the government fails even to cite, this court recognized only three categories of fugitives, the first two concerned persons who allegedly committed crimes while in the U.S., and then either one fled the country or two refused to return. The third category, created by Congress, arises only in civil forfeiture cases. Appellant fits none of these categories. As a result, Judge Seibert chose to expand the Fugitive Disentitlement Doctrine in a manner never authorized by this court or by Congress. In doing so, she ignored the Supreme Court's decision in Deegan, which directs courts not to impose the harsh sanction of disentitlement without guidance from Congress. Because Appellant is not a fugitive, this court need not address whether Appellant should be disentitled if she were. However, if the court does examine whether Judge Seibert abused her discretion in ordering disentitlement, it should exercise pendant appellate jurisdiction over the two threshold issues decided by the lower court, extraterritoriality and due process, to ensure meaningful review of Judge Seibert's expansion of the Fugitive Doctrine. Regarding extraterritoriality, Judge Seibert erred both in defining the, quote, focus of the CEA and concluding that it did not matter where the conduct related to that focus occurred. As RJR Nabisco stated and Prime confirmed, quote, if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory, unquote. Here, none of the alleged manipulative conduct occurred in the U.S. With respect to due process, the lower court ignored the proper test under this court's decision in Alcazar, that is whether Appellant's, quote, aim was to cause harm in the U.S. In fact, the indictment acknowledges it was not. In sum, the lower court's expansion of the Fugitive Disentitlement Doctrine defies binding precedent, imposes an unjustified penalty on an absent foreign defendant having no legal obligation to appear in the U.S. and would allow impermissible extraterritorial prosecutions to go unchallenged. For these reasons, we urge reversal. Can I just ask, uh, Judge Livingston, uh, about the collateral estoppel, uh, decision. I mean, you don't disagree that the motion panel's decision is in conflict with the authority from the 6th and 11th circuits, do you? So, uh, maybe the motions panel was correct and maybe we'll agree with the motions panel, but we would be creating a circuit split. You're, you're right, Your Honor, that with respect to the collateral order doctrine, both Martirosian and Shalhoub did, uh, find that the respective courts did not have jurisdiction over the Fugitive Disentitlement Doctrine. That was briefed extensively, argued extensively before the, uh, motions panel, and, um, for reasons that we've set forth both in the response to the government's motion to dismiss as well as in our appellate briefs, we think those decisions, um, are simply wrong with respect to the collateral order doctrine. In addition, in Shalhoub, you had a, had a defendant who, um, had actually committed a part of the crime in the United States, so it was a, a much different factual scenario, but, uh, to that extent, yes, we, we... Yeah, no, I think it's only the 6th circuit decision that I thought squarely you just had to acknowledge that there would be, there's a circuit split, um, if the motions, uh, panel got it right. Uh, I think that's, I think that's right, and, and we certainly think that there are ample reasons why, uh, the Marta Rosen case was, was incorrect, particularly in that it didn't find any of the prongs of the collateral order doctrine met, including whether the issue had been fully decided, concluding that it was the merits decision that needed to be decided when, in fact, the Fugitive Disentitlement Issue had clearly been fully decided by the lower court. Can I also ask about, uh, and just understanding, uh, how this, uh, this expansion of the Fugitive Disentitlement Doctrine, uh, you say it's expanding, how it's expanding, uh, would this expansion apply to, uh, U.S. citizens as well? I'm assuming it is, so that if a U.S. citizen lives abroad, uh, commits a crime, the activity is abroad, but it's directed at the United States, maybe intending to harm the United States, um, that person, uh, if the Fugitive Disentitlement Doctrine, if he's a fugitive, it's an expansion of the doctrine by your light, or am I misunderstanding something? Well, I, I certainly think that, uh, we, we take the position that the court in Colossos and, uh, every other Second Circuit case has recognized clearly the two categories of common law fugitive, which even under your scenario, um, that person would not be deemed a fugitive, and we think that Deegan counsels restraint in expanding the doctrine and having the courts decide the, the limits of their own authority. Um, I do think that, that you couldn't find a case that's more, or, or rather, less deserving of expansion than this one, where you don't have a U.S. citizen, where you don't have, uh, allegations that, uh, the defendant targeted the United States to cause harm, where, uh, the defendant is non-extraditable, where there is now, we know, a Second Circuit case that squarely calls into question whether this prosecution is even permissible, um, under Prime International, and to, uh, to, uh, to conclude that, therefore, with all those factors in place, that, that this appellant should be disentitled from even raising the issue of whether the court has authority and whether the prosecution, uh, well exceeds its reach as allowed by this court in Prime, um, that's a, that's a pretty tough case, we think, to start expanding the case, because, uh, some of the arguments that you are raising, uh, whether the United States was a target, that your client is a non-citizen, and so on, um, do these issues not weigh more sharply in terms of whether it was an abuse of discretion, rather than a more abstract question of fugitivity? No, Your Honor, because the, the, the analysis, the, the, the discretionary components only come into play if the court has found that the defendant is a fugitive. But what, what if a court, what if a court says that the question of whether someone is a fugitive is so vexed and so complicated under the circumstances of the case, that the court just goes on and says, you know, even if this person was a fugitive, it's, uh, I, I exercise my discretion, uh, not to, uh, not to apply the doctrine. A court, a, a court could do that if it found in exercising its discretion that the person, that the doctrine shouldn't be applied, um, but in this case, the opposite occurred, and frankly, uh, it's our position that this is not a tough call from the, from the standpoint of determining whether under existing law, um, this appellant is a fugitive. In fact, Judge Seibert conceded that under existing law of the Second Circuit, there was no case that would include Madame Bescon as a fugitive. So we, we think the error was, was in the first instance, concluding that she was a fugitive at all. And then secondly, by failing to take into these, uh, account these additional factors, we certainly think that the court erred in exercising discretion and expanding a doctrine, especially in light of Deegan's that some guidance from Congress should be useful. And the example of the civil forfeiture cases is the best one where, where Deegan said, no, that's not a situation where a defendant should be disentitled. And the Congress came in and said, we think it should be. Um, but so far, there's nothing that even comes close to labeling, uh, this appellant a fugitive. I have another, I have a question, uh, Judge Walker, uh, the, um, if you're, you say prime controls and, uh, therefore, uh, this case can't be prosecuted, it's extraterritorial application, and there's nothing in the United States that wants any different conclusion. Um, if that's true, then the due process question is, is beside the point, right? I mean, there is no prosecution. You don't have to argue an absence of due process. Correct. Okay. It's clear. Okay. Can I just ask, this is sort of returning to Judge Jacob's, uh, question. Um, but let's say we disagreed with you just for the moment about the extent of the fugitive disentitlement doctrine. Um, there's still, you're, you still have an arguments about its application in this case, and we have this four-factor, um, articulation. I'm wondering whether some of the concerns about extraterritoriality and our decision in prime might be, um, part of that, uh, four-factor test, and have you, uh, have you thought about that? We, we thought about it greatly, and we absolutely agree that when you look at... So help me understand how that would fit within the four-factor. Well, I'll tell you the two easiest ways, I think, which is that when you look at the second and third of the factors, so is the appellant, quote, flouting the judicial process, or is the appellant's conduct, or by allowing, uh, an appellant, uh, like Madam Bisconti to challenge the indictment, is that encouraging, um, improperly, uh, other defendants who might be and frankly, we think, um, more correct than one where the exact statute, the Commodity Exchange Act, the exact section, section 982, the, almost the exact degree of conduct as took place in Prime International is it, is at issue here, and it was, it was after the, in fairness to Judge Seibert, it was decided after, uh, her opinion, although the, the critical language comes from R.J.R. Nabisco, which was in place, so in exercising the discretion of disentitling a defendant from being able to make these arguments, we're sitting on an indictment that, at least in the defense position, um, falls squarely under the prescription of Prime International, and to say that in order to exercise that challenge, she has to leave her home, leave her family, leave her, her job, she's a sole earner for her family, travel to a foreign country, certainly risk almost guaranteed detention for an extended period of time, to do all those, you know, all that punishing activity, um, merely to advance a legal argument that we think under Prime is now clear, um, that, that's, that's an discretion. Ann Arby. Thank you. We will, uh, hear from the, uh, from Mr. Sanders. May it please the Court. Jeremy Sanders of the Criminal Division on behalf of the United States. Your Honors, the final judgment rule embodied in Section 1291 represents a policy judgment by Congress that appellate review must await a final decision from the district court that terminates the merits of the litigation, and as the Supreme Court and this Court have repeatedly recognized, that policy disfavoring Keith Neal appellate review is, quote, at its strongest in the field of criminal law. Yet, both in her brief and here in her presentation before the Court this morning, Defendant Biscond asks you to ignore that admonition not once, but twice. First, she asks that you expand the narrow confines of the collateral order doctrine in direct conflict with recent decisions from two other courts of appeals to cover a district court's decision to decline to consider motions to dismiss brought by defendants who refuse to submit to the jurisdiction of the district court. And second, she asks you to expand the limited nature of interlocutory review even further by invoking the doctrine of pendant appellate jurisdiction to review the merits of the district court's decision denying her pretrial motions to dismiss the indictment. This second request is all the more exceptional given the fact that this Court has explicitly held that the doctrine of pendant appellate jurisdiction has no place in criminal law, a point of law that Mr. Shachel did not even acknowledge in his presentation this morning. This Court should resist both invitations and dismiss the appeal. I'd like to begin just briefly to reiterate reiterating the government's argument that reconsideration of the motions panel's decision is warranted here, particularly given, as Chief Judge Livingston pointed out, that a decision to exercise jurisdiction in this interlocutory appeal would create a circuit split with both the Sixth and the Eleventh Circuits. Turning to the merits of the district court's fugitive disentitlement ruling, in her brief and this morning, Biscott characterizes Judge Seibert's decision classifying her as a fugitive as unwarranted and unprecedented, but that is far from the case. In fact, several decisions from this Court, including Ng, Catino, and Blanco, all speak to a broad understanding of the term fugitive, and contrary to the defendant's assertion, in neither Finkelstein nor Palazzo's did this Court purport to define fugitive for all time and exclude individuals like Ms. Biscott. Do you agree that the district court's decision goes beyond the scope of the common law definition of fugitive? I think it's certainly correct that it's just an expansion of the doctrine as the term was interpreted by common law, but in particular, Judge Seibert recognized that when she quoted with approval the language from the district court's decision in the Hayes case, that the and that it cannot be bound by semantics and needlessly limit fugitive status in that way. And she may be right about that, but going to the first question that you raised about the applicability of the collateral order doctrine, doesn't your position effectively mean that that issue, an expansion of the common law definition, expansion of the category, is effectively unreviewable on appeal? Isn't that the implication of the Sixth Circuit and Eleventh Circuit decision, or am I missing something? No, I think in this case, it would be unreviewable. In appeal, of course, the Supreme Court has cautioned multiple times that that is not the end-all of the collateral order doctrine inquiry. And in fact, the mere identification of some interest that would be irretrievably lost has never sufficed to satisfy the collateral order doctrine. That's the digital... No, counsel, it has to be a significant interest, right? That's correct. If there's a significant interest, and there's a lot of argument about that in this case, then the fact that it is unreviewable is critical, isn't it? Well, no, I think the Supreme Court has given some color to what the critical or important nature of an issue must be, and that's that it must be a constitutional statutory provision relied upon to confer a right not to be tried, or that trial will not occur. Or as, for instance, in the Sell case and this court's decision in Magasuya, some intrusion of the body by a decision to require involuntary medication. I don't think the definition of a fugitive qualifies, and in fact, as the 11th Circuit and the 6th Circuit both concluded, Mrs. Kahn, like the defendants in those cases, does not have a freestanding right not to be labeled a fugitive any more than a defendant doesn't have a freestanding right to be labeled a defendant. Counsel, this is Judge Jacobs. I mean, I think you have to concede that the geographic factors here are at least remarkable. Let me give you a hypothetical. Let's assume that a prosecutor succeeds in a capital case, and the criminal defendant is executed, and then a court in jurisdiction for criminal violation of human rights indicts the prosecutor, and the prosecutor, say, from New York, declines to go to Belgium to answer the charge. Is the prosecutor a fugitive? I think for purposes of examining the Fugitive Disentitlement Doctrine under these cases, the answer would be yes, that someone who refuses to submit to the jurisdiction of a court where they have been properly tried, or excuse me, properly accused, and remember here, a grand jury sitting in the Eastern District of New York returned an indictment against the defendant on a finding of probable cause. This is not a whim of some prosecutorial agency in another government, but I think the important thing to recognize there, Judge Jacobs, is what the district court noted in footnote 5 of her opinion, and that's JA 53, and I think this does go to some of the questions that were asked by the panel earlier, but if there were a situation where there was, quote, any abuse or prosecutorial overreaching, the district court could decline to apply the Fugitive Disentitlement Doctrine, so regardless of whether someone would fit that definition, and I think we trust district courts to make those decisions on a day-to-day basis, along with many other things that we entrust to district courts that are not reviewable by these courts of appeals, either in an interlocutory posture or sometimes at all. If I could turn to the pendant appellate jurisdiction point, there's certainly no doubt that a defendant like Ms. Bisconn, had she appeared before the district court and the district court ruled on her motions to dismiss and denied them, she could not appeal them in an interlocutory posture to this court. That is black letter law. So there is somewhat of a perverse result in that Ms. Bisconn is using pendant appellate jurisdiction to ask this court to assert jurisdiction over issues that she could not have brought in the first instance, and that's why this court has recognized that, quote, there is no pendant appellate jurisdiction in criminal cases. Now I note, as Mr. Stachel pointed out in his brief on behalf of Ms. Bisconn, that there are certain decisions by this court that don't hew explicitly to that rule, but I think the point there is, as the court in Ferguson, as this court in Ferguson noted, that conclusion follows directly from the Supreme Court's admonition and abney that, where they considered, quote, whether the courts have jurisdiction to consider non-jeopardy claims presented pendant to such appeals, and the court concluded that they did not, and stated that any other rule would encourage criminal defendants to seek review of or assert frivolous double jeopardy claims, or in this case, a frivolous claim subject to the collateral order as the motions panel's ruling is upheld, in order to bring more serious but otherwise non-appealable questions to the attention of court of appeals, and that's exactly what Ms. Bisconn is attempting to do here, and the court should resist that invitation. One minute. And I think, Your Honor, I'll just touch briefly on the district court's ruling on the merits of the application of the Fugitive Disentitlement Doctrine here. Again, as Chief Judge Livingston pointed out, there are four rationales for that doctrine. The court looked at each of them, and importantly, and this, her decision is at JA 47 to 48, I think one of the aspects that stands out most is that in the discussion of whether the defendant was flouting the judicial process, the district court made the distinction between a defendant who simply resides abroad and doesn't return or come to the jurisdiction to face the charges, and one like Bisconn here, who affirmatively seeks to invoke the benefits of jurisdiction by asking for discovery, by asking for rulings on pretrial motions that would not otherwise be available to her. And the judge, district judge in this case, found that it did support application of the doctrine. There are no further questions. We'll rest on the arguments in our brief, and we will ask that the court dismiss Ms. Bisconn's appeal in its entirety for launch of jurisdiction, or in the alternative, affirm the district court's fugitive disentitlement ruling, and dismiss the remainder of the appeal. Thank you. Lauren Stachel, may I use my rebuttal time? Yes, please do. Several points. First, the government continues inexplicably to argue that there's no potential for a penitent appellate jurisdiction in a criminal case, consistently ignoring the Hoskins case, which, surprisingly, Mr. Sanders actually was on the brief on, which was decided years after the Ferguson case, where the court did exercise penitent appellate jurisdiction in a criminal case. In addition, there are four other cases that we cite in our brief where this court has exercised penitent appellate jurisdiction in a criminal case. The government also continues to say that there's only one type of collateral order that can be in the category of where an appellant maintains a violation of a right not to be subject to trial. That's not the case. There's a second category where orders would become moot if final review had to await conviction and sentence, such as Stack v. Boyle and Selby v. United States. So that's the category that we're in, and as your honors indicated, that this issue, if this issue were not reviewable pursuant to the collateral order doctrine, it would never be reviewable. That is, any expansion of the fugitive disentitlement doctrine. And the footnote that Mr. Sanders cites regarding prosecutorial abuse, the court, a district court isn't going to get to the merits of any claim about prosecutorial misconduct or abuse, or frankly anything, if a defendant is disentitled from advancing any issues on the merits. So this is not a case about the right to be labeled a fugitive or not be labeled a fugitive. It's a fundamental right of a defendant to seek access to the court, to mount a defense. That's what appellant has done, and we urge the court to reverse the lower court's decision. Thank you very much. The